**STATE of Delaware**

v.

**GETTY OIL COMPANY, (Eastern Operations) INC.**

Superior Court of Delaware,
New Castle.

April 25, 1973.

Jerome S. Cohen, Sp. Counsel to Dept. of Natural Resources and Environmental Control, Dover, for the State.

Charles F. Richards, Jr., Wilmington, for defendant.

BIFFERATO, Judge.

This is a criminal action brought by the State of Delaware against Getty Oil Company, (Eastern Operations) Inc., ("Getty") charging that Getty caused visible air contaminants and/or smoke to be emitted into the air in violation of Regulation XV, Section 2.1, of the Delaware Water and Air Resources Commission Regulations ("DWARCR") governing the control of air pollution and that this alleged action violates 7 Del.C. § 6013(a). Getty now moves to dismiss under Rule 12(b), Superior Court Criminal Rules, Del.C.Ann.

For purposes of this motion this Court is assuming certain facts to be true, as follows: (1) that on August 10, 1972, Getty started up a certain stationary piece of equipment, known as a fluid coker, which emitted some dark smoke, (2) that this smoke caused several complaints to be registered and a check was made by the State both as to the source of the smoke and as to its density, and (3) that the emission of smoke was a completed action lasting only one or two days, not a continuing condition. If either counsel should find these assumed facts to be erroneous, then a formal hearing may be held.

The Court will deal with Getty's arguments in the order submitted.

First, Getty argues that administrative negotiations and proceedings in accordance

with 7 Del.C. § 6006 should have been followed because 7 Del.C. § 6204 and § 6205 mandated this procedure. It is argued that since the State failed to do so before initiating criminal proceedings under 7 Del.C. § 6013(a), this Court lacks jurisdiction.

7 Del.C. § 6204 states that if it is believed that "a condition of air pollution *exists,* or that conduct in violation of the Commission's rules and regulations *is occurring,* it shall proceed as set forth in section 6006 of this title." (Emphasis added)

It seems clear that the intent behind this language is to deal with existing, continuous problems of air pollution. If there is a long-standing, present source of pollution, the proper method of dealing with it is to proceed in accordance with sections 6204 and 6006. However, in this case, there is a completed action that occurred on one day. Section 6204 does not mandate the use of section 6006 in dealing with this problem.

Section 6205 of Title 7 does not apply either. This section deals with "measures to prevent or correct air pollution or conduct in violation of any rule or regulation of the Commission . . ." The State is not asking Getty to prevent or correct a situation. The State is prosecuting because of an alleged past occurrence, not a present condition.

Notwithstanding that there is no mandate to do so, should the State follow the procedures outlined in Section 6006 before initiating action under § 6013(a)? The opening sentence of § 6006 says that: "Whenever the Secretary . . . determines that a person has violated any of the provisions of this Part, or any rule or regulation duly promulgated thereunder, or any order of the Department, he shall endeavor by conference, conciliation or persuasion to obtain compliance with all requirements of this Part." Again, it appears that the clear intent is to use this procedure for a continuing, existing problem. There can be no compliance after an alleged violation has been completed. Assuming that the alleged violation occurred, nothing by way of compliance, conference, conciliation, or persuasion can change that occurrence. Of course, the Secretary could persuade Getty not to violate this Part again, if Getty had done so now, but could not persuade Getty not to do what it is alleged to have already done. The whole section is directed towards dealing with an existing problem, not with the case before us.

Counsel for Getty also argues that the words "shall endeavor", in section 6006, indicate a mandate to proceed under that section. However, the words "shall be fined" are contained in section 6013 with respect to a violation of "any of the provisions of this part". This could be considered mandatory as well.

The whole idea behind the Conservation Act and the Water and Air Resources Chapter, Chapter 60 of Title 7, Delaware Code, is to allow the State to "control the development and use of the water, underwater and air resources of the State so as to effectuate full utilization, conservation, and protection of the water and air resources of the State." 7 Del.C. § 6001(a)(2). "The water, underwater and air resources of the State must be protected from pollution in the interest of the health and safety of the public." 7 Del.C. Section 6001(b)(5). And further, "This Part, being necessary for the welfare of the State and its inhabitants, shall be liberally construed in order to effect the purpose thereof." 7 Del.C. § 6015. So, except where a particular course of action is clearly mandated, the State may exercise discretion in following the procedures available to it. Protection of the environment is the paramount consideration. Flexibility in the selection of available procedures is necessary in many cases. The statute provides for a particular course of action in case of an existing, continuing pollution problem. However, in the situation where an action in violation of the

rules and regulations has already occurred, the statute allows flexibility.

Once the State has chosen to prosecute under 7 Del.C. § 6013(a), then jurisdiction lies with the Superior Court. 7 Del.C. § 6013(e).

The next two grounds for Getty's motion to dismiss are that there has been a failure to state an offense. First, Getty claims that there has been no violation of any rule or regulation respecting a "commercial type application" under 7 Del.C. § 6013(a) and that none has been alleged. Second, Getty states that even if a violation of Section 2.1 of Regulation XV, DWARCR, were proven, it would not constitute criminal conduct under 7 Del.C. § 6013 or any other provision of law. These will be treated together.

■ The Court agrees that 7 Del.C. § 6013(a) does require that someone neglect or fail to obey a rule or regulation respecting a "commercial type application" in order for there to be a violation. A "commercial type application" is defined in 7 Del.C. § 6007, as amended by House Bill No. 210 as meaning:

1) Any request or petition for a license or permit, relating to any system, operation or process not heretofore defined as an "individual type application"; or

2) Any practical or legal effectuation of statutes, rules or regulations relating to any system, operation or process not heretofore defined as an "individual type application".

Regulations II and XV, DWARCR, are the two regulations involved here. Regulation II, DWARCR, concerns permits, registration, and the requirements for applying for permits. The basic purpose is "to describe the requirements to report and obtain approval of equipment which as the potential to discharge air contaminants into the atmosphere." Section 1.1, Regulation II, DWARCR.

The stated purpose of Regulation XV, Section 1.1, DWARCR, is "to control the emissions of visible air contaminants from all stationary sources".

■ Getty has been charged with violating Regulation XV, DWARCR, by emitting smoke or air contaminants greater in density than that allowed. The question is, does violation of Regulation XV, Section 2.1, DWARCR, constitute a neglect or failure to obey a rule or regulation respecting a "commercial type application"?

One of the general provisions of Regulation XV, DWARCR, is that "this regulation shall not apply to the start-up and shut-down of equipment which operates continuously or in an extended steady state when the operation of such equipment is governed by an operation certificate issued pursuant to the provisions of Section 3, Regulation II". In other words, if Getty had had an operation certificate governing the start-up of the equipment, then Getty would not have had to worry about Regulation XV, DWARCR. On the other hand, since Getty did not have an operation certificate, and had neglected or failed to obtain one, then it was obligated to comply with the standards given concerning visible emissions. This would seem to be a clear case of neglect or failure to obey a regulation respecting a "commercial type application", namely, an application for an operating certificate.

The whole intent behind Section 3 of Regulation II, DWARCR, is in support of this position.

Section 3.1. "No person shall initiate construction, install or cause the alteration of any equipment or facility or air contaminant control device which will emit or cause to be emitted an air contaminant prior to receiving approval of his application from the Department. The application shall consist of a description of the following:

. . . (g) Methods and expected frequency of occurrence of the start-up

and shut-down of the equipment, including projected effects on emissions to the atmosphere and on ambient air quality."

Section 3.2. "No person shall use or cause to be used any such new or altered equipment or air contaminant control device for which an installation or alteration permit is required or issued until an operating certificate has been issued by the Department."

Section 3.3. "Within 90 days of receipt of a written request by the Department, an owner or operator of existing equipment or facilities or an air contaminant control device which emit(s) or cause(s) to be emitted an air contaminant shall obtain an Operating Certificate for such equipment or facilities or air contaminant control device. If no such written request has been received before September 30, 1973, then such owner or operator shall obtain, on his own initiative, an Operating Certificate from the Department no later than December 31, 1973."

Section 3.4. "No operating certificate or renewal thereof, required by this Section, shall be issued by the Department unless the applicant shows to the satisfaction of the Department that the equipment is designed to operate and will operate without causing a violation of any rule or regulation of the Commission . . . ."

Section 3.5. "Tests are required in order to 'determine the kind and/or amount of the contaminants emitted from the equipment or whether the equipment or fuel or the operation of the equipment will be in violation of any of the provisions of any rule or regulation of the Commission.' "

This regulation, then, is concerned with the start-up, shut-down, and general operation of existing equipment that emits or might emit air contaminants. It is also concerned with the alteration, installation, and construction of such equipment. The regulation also provides for a method of control which requires the issuance of operating certificates. These certificates are required for the operation of the equipment and are issued only after tests show that the start-up, shut-down, or operation of the equipment will not violate any of the various regulations concerning air pollution. The only way to obtain a certificate is to apply for one, either within 90 days of receiving a written request from the Department or by one's own initiative. In any case, an operating certificate must be obtained by December 31, 1973. Certainly, there is no violation of this requirement if an operating certificate is not acquired before September 30, 1973 (as long as no written request has been received before September 30, 1973). However, just because an operating certificate has not been obtained, there is no right to ignore the other regulations. This is especially true in the case of Regulation XV, which requires a certain standard of emissions to be met *except* where an operating certificate governs the operation of the equipment.

So, in answer to the question whether or not a violation of Regulation XV, DWARCR, constitutes neglect or failure to obey a regulation respecting a "commercial type application", it would appear that an alleged violation of Regulation XV without an operating certificate does involve the neglect or failure to apply for an operating certificate; i. e., a "commercial type application".

Therefore, the State has alleged an offense concerning a "commercial type application" and the alleged violation of Regulation XV, Section 2.1, DWARCR, is a criminal offense under 7 Del.C. § 6013(a). Getty's motion to dismiss on these grounds is denied.

Getty's final argument for dismissal is two-fold: (1) that the information filed by the State failed to cite the statute which purports to make violation of Regulation XV a criminal offense, and (2) that use of

the disjunctive language of Regulation XV in the indictment and information is ambiguous. Therefore, Getty claims that it has been denied a clear and concise statement of the charges against it as required in Rule 7(c), Superior Court Criminal Rules, and also has been denied the right to be fully informed of the nature and cause of the charges against it as guaranteed by Article I, Section 7, of the Delaware Constitution, Del.C.Ann. and the Sixth Amendment of the United States Constitution.

Defendant must be provided with a plain, concise, written statement of the charges against it under Rule 7(c), Superior Court Criminal Rules, so that he may prepare an adequate defense. United States v. Cruickshank, 92 U.S. 542, 23 L. Ed. 588 (1876); Demonia v. State, Del. Supr.Ct., 8 Storey 414, 210 A.2d 303 (1965). In the complaint and summons filed by the State on August 11, 1972, defendant is charged with violating both Regulations XV, DWARCR, and 7 Del.C. § 6013(a). However, in the information filed on August 21, 1972, the State failed to cite the statute purportedly violated, citing only the regulation. Defendant complains of this omission, but Rule 7(c) does not provide for dismissal of an indictment in case of error or omission unless defendant is misled to its prejudice. There does not appear to have been any prejudice to defendant in preparing its case, and none has been alleged. Finding no prejudice, the Court will not dismiss but will allow the State to amend its information pursuant to Rule 7(e), Superior Court Criminal Rules.

Getty also argues that the use of the term "and/or" in Regulation XV, DWARCR, and in the indictment and information is improper. While there has been widespread contempt for the use of the disjunctive phrase "and/or" in statutes, regulations, and pleadings, "the better rule is that the use of the disjunctive is fatal only where uncertainty results." 42 C.J.S.

Indictments and Information, § 139(b), p. 1037. The common interpretation of the term "and/or" is that it means either or both. The problematical language in Regulation XV, Section 2.1, is "air contaminants and/or smoke." This may be interpreted as meaning either air contaminants or smoke, or both together. There is not sufficient uncertainty here to call for a dismissal.

In accordance with the foregoing, I find the indictment and information to be sufficiently plain and concise to allow defendant to prepare his defenses. The State may amend its information so as to include the statute said to be violated. The defendant's motion to dismiss is denied.