**DELAWARE REAL ESTATE COMMIS-SION et al., Appellee below, Appellant,**

v.

**PATTERSON–SCHWARTZ & ASSOCIATES, INC., a Corporation of the State of Delaware, Appellant below, Appellee.**

Supreme Court of Delaware.

Argued May 12, 1975.

Decided Aug. 5, 1975.

Rehearing Denied Aug. 22, 1975.

Lester J. Taufen, Deputy Atty. Gen., Wilmington, for appellee below, appellant.

E. N. Carpenter, II and James T. McKinstry, Richards, Layton & Finger, Wilmington, for appellant below, appellee.

Before HERRMANN, C. J., MARVEL, Vice Chancellor, and BUSH, J.

HERRMANN, Chief Justice:

The question before us is whether the Delaware Real Estate Commission is empowered to "formally reprimand" publicly a licensed real estate broker for certain newspaper advertising considered improper by the Commission.

### I.

The Superior Court held that the public censure was a disciplinary act unauthorized by the Statute creating and governing the Commission. 24 Del.C. §§ 2901 *et seq.* We agree.

The pertinent provisions of the Statute (§§ 2912, 2913) * empower the Commission to "suspend or revoke any certificate" of a real estate broker for the reasons and in the manner prescribed by the Statute. The authority of the Commission is limited strictly by the Statute which created it. We find nothing therein, expressed or implied, to warrant the conclusion that the Commission has any disciplinary power other than the authority to suspend or revoke a licensee's certificate.

As the source of its asserted power to publicly censure a licensee, the Commissions points to 24 Del.C. § 2905(3) which authorizes the Commission to "[c]onduct hearings upon charges calling for discipline of a licensee or revocation of a license; * * *." We find this contention untenable; § 2905(3) must be read in the light of, and reconciled with, the limited disciplinary powers expressly granted to the Commission by §§ 2912, 2913. If those powers are to be enlarged, the General Assembly must act.

### II.

The Commission argues, alternatively, that its formal and public reprimand in this case was a legitimate non-disciplinary exercise of its rule-making authority under 24 Del.C. § 2905(1).**

The reprimand issued here referred to alleged statutory violations only. Nowhere does it appear that the Commission indicated that a new rule was being established or that the licensee was alleged to be in violation of any existing rule.

---

* 24 Del.C. § 2912 provides in pertinent part:
"§ 2912. Revocation of certificate; causes.

"(a) The Commission may, upon its own motion, and shall upon the verified complaint in writing of any person, provided such complaint, together with evidence documentary or otherwise presented in connection therewith, shall make out a prima facie case, investigate the actions of any real estate broker or real estate salesman or any person who shall assume to act in either of such capacities within this State, and may suspend or revoke any certificate issued under the provisions of this chapter, * * *."

24 Del.C. § 2913 provides in pertinent part:
"§ 2913. Notice and hearing upon revocation of certificate or denial of application; powers of Commission.

"The Commission shall, before denying an application for certificate or before suspending or revoking any certificate, set the matter down for a hearing.
&ast; &ast; &ast; &ast; &ast;
"If the Commission determines that any applicant is not qualified to receive a certificate, a certificate shall not be granted to such applicant, and if the Commission determines that any certificate-holder is guilty of a violation of any of the provisions of this chapter, his or its certificate shall be suspended or revoked."

** By 24 Del.C. § 2905(1), the Commission was authorized to: "Adopt and revise such rules and regulations not inconsistent with the law as may be necessary to enable it to carry into effect the provisions of this chapter."

In this connection, the Superior Court concluded:

"* * *. I find it unnecessary to determine within the context of this appeal whether the Commission has the authority to impose discipline other than suspension or revocation of licenses under its rule making authority. The record in this case demonstrates beyond question that the Commission did not purport to exercise its rule making authority; did not charge the respondent with having violated any specific rule; and its argument now that it so considered its action is 'bootstrapping' at best."

We agree.

The Commission contends that its rule-making power was properly exercised in this instance "on a case-by-case adjudication instead of choosing to promulgate general rules and regulations", citing *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580–81, 91 L.Ed. 1995, 2002–03 (1947); *R. H. Macy & Co., Inc. v. Director, Div. of Taxation*, 77 N.J.Super. 155, 185 A.2d 682, 695–96 (1962), and *Civil Service Commission, etc. v. Pitlock*, 44 Mich.App. 410, 205 N.W.2d 293 (1973).

Those authorities do not support the Commission's position. In *Chenery*, the Supreme Court cautioned against "ad hoc adjudication to formulate new standards of conduct within the framework" of the enabling Statute, and stated that the "function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future." 332 U.S. at 202, 67 S.Ct. at 1580, 91 L.Ed. at 2002. In *Pitlock*, the Court reversed the Commission's attempt to promulgate a rule on the basis of a case-by-case adjudication on the ground that the purported rule did not provide meaningful guidance concerning the required mode of conduct:

"It is not enough for an administrative body to label a purported standard a

rule. A direct attempt to authorize ad hoc determinations would be quickly recognized as unauthorized. We should reach the same result when an administrative body seeks to usurp authority covertly under the guise of its rule-making power." (205 N.W.2d at 294)

The *Macy* case must be considered in the light of *Bolker Beverages, Inc. v. Davis*, 38 N.J. 138, 183 A.2d 64 (1962), wherein the New Jersey Supreme Court stated:

"The theory of administrative rule-making is, of course, that in certain fields and in certain respects the public interest is better served by delegating a large part of detailed lawmaking to the expert administrator, controlled by policies, objects and standards laid down by the legislature, rather than by having all the details spelled out through the traditional legislative process. Administrative rule-making remains in essence, however, the enactment of legislation of general application prospective in nature. The object is not legislation *ad hoc* or after the fact, but rather the promulgation, through the basic statute and the implementing regulations taken as a unitary whole, of a code governing action and conduct in the particular field of regulation so those concerned may know in advance all the rules of the game, so to speak, and may act with reasonable assurance. Without sufficiently definite regulations and standards administrative control lacks the essential quality of fairly predictable decisions. Persons subject to regulation are entitled to something more than a general declaration of statutory purpose to guide their conduct before they are restricted or penalized by an agency for what it then decides was wrong from its hindsight conception of what the public interest requires in the particular situation. [183 A.2d at 71]

* * * * * *

"* * *. As has already been pointed out, it is the antithesis of legislation

to make law from case to case and after the fact. Where an administrative agent is given full rule-making power, he must in all fairness, bottom an alleged violation on general legislation before he may rule in a particular case. The general mandate, either statutory or administrative must precede the specific violation." [183 A.2d at 73]

We adopt the principles and guidelines set forth in *Boller* for the governance of the rule-making power of administrative agencies. It is clear therefrom that, as the Superior Court held, the retroactive rule-making power the Commission purported to exercise here "suffers from serious due process deficiencies" and is constitutionally impermissible.

Affirmed.