STATE of Delaware

v.

Melvin L. BRAUN, Defendant.

Superior Court of Delaware,
Kent.

Submitted April 22, 1977.

Decided Aug. 1, 1977.

June D. MacArtor, Deputy Atty. Gen., for the State of Delaware.

Roy S. Shiels, of Brown, Shiels & Barros, Dover, for defendant.

CHRISTIE, Judge.

The defendant Melvin L. Braun, owner of Dover Products, Inc., was charged with violating 7 *Del.C.* § 6003(b)(1) in that he is alleged to have used equipment which causes or contributes to the discharge of an air contaminant without first having obtained a permit from the Secretary of the Department of Natural Resources and Environmental Control of the State of Delaware. Defendant was also charged with violating 7 *Del.C.* § 6013(a) by wilfully failing to obey an order to cease and desist issued by the Secretary.

These charges arise from a determination by the Department of Natural Resources and Environmental Control that Dover Products Company, Inc., a rendering plant, "emitted odorous air contaminants" on June

7, 8, 9 and 10, 1976. Pursuant to the authority vested in him by 7 *Del.C.* § 6018, the Secretary of the Department on June 10, 1976, issued an order that "Dover Products Company, Inc. cease and desist from the operation of any and all combustion and process equipment and facilities for the storage and transport of raw and processed materials and condensate which discharge or may discharge odorous air contaminants to the atmosphere at its rendering plant on County Road 100, just outside the city limits of Dover, Delaware, until such time as the permits required by the Department have been obtained." (Order to cease and desist No. 76–A–4)

Neither the defendant nor his company obtained a permit as required by 7 *Del.C.* § 6003(b)(1), and they continued to operate the equipment alleged to be discharging odorous air contaminants.

Defendant seeks the dismissal of the indictment, challenging the statute as: (a) being so vague as to be unconstitutional, (b) providing for an unconstitutional delegation of legislative authority, and (c) being improperly retroactive in its application. He also asserts that essential allegations are missing from the indictment.

I

The defendant first contends that 7 *Del.C.* § 6003(b)(1) is vague, indefinite and uncertain and, therefore, unconstitutional. The statute reads:

"No person shall, without having first obtained a permit from the Secretary, construct, install, replace, modify or use any equipment or device or other article:

(1) which may cause or contribute to the discharge of any air contaminant."

"Air contaminant" is defined in a parallel provision as "particulate matter, dust, fumes, gas, mist, smoke or vapor or any combination thereof, exclusive of uncombined water." 7 *Del.C.* § 6002(2). It is contended that there is an ambiguity in this phrase which poses constitutional problems.

■ Due process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal. for "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Clark v. State*, Del. Supr., 287 A.2d 660 (1972); *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954).

■ Where the constitutional requirement of definiteness is in issue, the Court has the obligation to construe the statute, if that can be done consistent with the legislative intention, to avoid the infirmity of vagueness. *State v. 0.0673 Acres of Land, etc.*, Del.Supr., 224 A.2d 598 (1966). *Du Pont v. Mills*, Del.Supr., 9 W.W.Harr. 42, 196 A. 168 (1937).

■ The Water and Air Resources Act, 7 Delaware Code, Chapter 60 was designed to allow the State to "control the development and use of the land, water, underwater and air resources of the State so as to effectuate full utilization, conservation, and protection of the water and air resources of the State." 7 *Del.C.* § 6001(b)(2). "The land, water, underwater and air resources of the State must be protected from pollution in the interest of the health and safety of the public." 7 *Del.C.* § 6001(a)(5). The General Assembly provided that: "This chapter, being necessary for the welfare of the State and its inhabitants, shall be liberally construed in order to preserve the land, air and water resources of the State." 7 *Del.C.* § 6020. In short, "Protection of the environment is the paramount consideration." *State v. Getty Oil Company (Eastern Operations) Inc.*, Del.Super., 305 A.2d 327, 329 (1973).

■ The Court's task, then, is to consider whether or not it is reasonably possible to construe 7 *Del.C.* § 6003(b)(1) in a manner that precisely furthers this goal. "It is to be presumed that the Legislature did not intend an unreasonable, absurd or unworkable result." *Opinion of the Justices*, Del. Supr., 295 A.2d 718, 722 (1972); *E. I. Du Pont De Nemours & Co. v. Clark*, Del.Supr., 32 Del.Ch. 527, 88 A.2d 436 (1952). A literal reading of § 6003 in a vacuum without

reference to the reasonable purposes of the statute could result in both an absurdity as to meaning of the statute and a doubt as to validity. The legislature surely did not intend to proscribe the discharge of all "air contaminants" however insignificant in quantity, short in duration or innocuous in character. In order to assure compliance with the constitutional requirement that statutes where possible are to be interpreted so as to be viable and workable, it is reasonable to read 7 *Del.C.* § 6003(b)(1) as if it were worded as follows:

"(b) No person shall, without first having obtained a permit from the Secretary, construct, install, replace, modify or use any equipment or device or other article:

(1) which may cause or contribute to the discharge of an air contaminant." (Such as to cause a condition of air pollution) [1]

The term "air pollution", in turn, is adequately defined in 7 *Del.C.* § 6002(3) as follows:

"(3) 'Air pollution' means the presence in the outdoor atmosphere of 1 or more air contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant or animal life or to property, or which unreasonably interferes with the enjoyment of life and property within the jurisdiction of this State, excluding all aspects of employer-employee relationships as to health and safety hazards." [2]

Any apparent harshness in 7 *Del.C.* § 6003(b)(1) or 7 *Del.C.* § 6002(3) is mitigated by the availability of a variance where good faith efforts have been made to comply with air pollution control requirements, but the necessary technology or alternative methods of control are not available without disproportionately high financial expense. 7 *Del.C.* § 6011.

Additionally, Chapter 60 provides extensive procedural safeguards and outside checks upon the discretionary power of administrative authorities. "Any person whose interest is substantially affected by any action of the Secretary may appeal to the Environmental Appeals Board within 20 days after the Secretary has announced his decision. The Board may affirm, modify or reverse the decision of the Secretary." 7 *Del.C.* § 6008(a). "Whenever a decision of the Secretary concerning a permit is appealed, the Board shall hold a public hearing in accordance with § 6006." 7 *Del.C.* § 6008(b). Finally, the Courts are available to any aggrieved defendant. 7 *Del.C.* § 6009.

■ Statutes directed at control of pollution in the environment are intended to encompass infinitely variable conditions. Flexibility and adaptability are required in meeting factual situations which could not have been foreseen by the General Assembly. *Fry Roof Co. v. Pollution Control Board*, 20 Ill.App.3d 301, 314 N.E.2d 350, cert. den. 420 U.S. 996, 95 S.Ct. 1438, 43 L.Ed.2d 679 (1974).

■ A statute of this kind cannot be expected to scientifically delineate all proscribed contaminants and "pollution."

■ The provisions of 7 *Del.C.* §§ 6003 and 6002(3), taken together, are clear and easily understood. Considering the nature and purpose of the Water and Air Resources Act, its need for flexibility, its standards when compared to those of other statutes that have been held valid, and its procedural safeguards, I find 7 *Del.C.* § 6003, as construed, to be definite enough to satisfy constitutional demands.

---

1. A corresponding approach has been taken in the regulations governing the control of air pollution, Department of Natural Resources and Environmental Control, May 1974; Regulation XIX § 2.1.

2. These code sections are similar to and as clear as, those used in the statutory framework of other states' pollution statutes. See *City of Monmouth v. Pollution Control Board*, Ill.Supr.,

57 Ill.2d 482, 313 N.E.2d 161 (1974); *Houston Compressed Steel Corp. v. Texas*, Tex.Civ. App., 456 S.W.2d 768 (1970); *Air Pollution Commissioner v. Coated Materials Co.*, Pa.Ct. Comm.Pl., 1 ER 1444 (1970); *Department of Health v. Owens-Corning Fiberglass Corp.*, 100 N.J.Super. 366, 242 A.2d 21, aff'd, 53 N.J. 248, 250 A.2d 11 (1968).

## II

Defendant further contends that 7 *Del.C.* § 6010(a) is unconstitutional because it delegates legislative power to the Secretary of the Department of Natural Resources and Environmental Control without specifying sufficient standards or guidelines within which the Secretary may act.

7 *Del.C.* § 6010(a) reads:

"(a) The Secretary may adopt, amend, modify or repeal rules or regulations, or plans, after public hearing, to effectuate the policy and purposes of this chapter."

The indictment, however, charged defendant with violation of express provisions of the Delaware Code (§§ 6003, 6013) and not of a rule or regulation adopted by the Secretary pursuant to 7 *Del.C.* § 6010, but in any event the delegation is not found to violate constitutional standards.

■ Under some circumstances, legislation which vests discretion in administrative officials without defining the terms and conditions under which such discretion may be exercised has been found to be an unconstitutional delegation of legislative power. That approach, however, has not prevailed where the statute can be reasonably construed in the light of surrounding circumstances and the stated purpose of the statute so as to contain reasonable implied standards for the protection of the general welfare. As said in *State v. Durham*, Del.Super., 6 Storey 170, 191 A.2d 646 (1963):

". . . Where the discretion to be exercised relates to police regulation for the protection of public morals, health, safety, or general welfare, and it is impracticable to fix standards without destroying the flexibility necessary to enable the administrative official to carry out the legislative will, the legislation delegating such discretion without such restrictions may be valid. Adequate safeguards and standards to guide discretion must be found in or be inferable from the statute, but the standards need not be minutely detailed, and the whole ordinance may be looked into in light of its surroundings and objectives for purposes of deciding whether there are standards and if they are sufficient."

Chapter 60, as construed, contains adequate statements of policy to guide the administrative agency. The goal is to protect, conserve and control the land, water and air resources of the State. 7 *Del.C.* § 6001(b). The method is to make it a misdemeanor for any person, without first having obtained a permit from the Secretary to construct, install, replace, modify or use any equipment or device or other article which may cause or contribute to the discharge of an air contaminant in sufficient quantities and of such characteristics and duration to either: (a) be injurious to human, plant or animal life or to property, or (b) unreasonably interfere with the enjoyment of life and property within the State. (7 *Del.C.* §§ 6003, 6002(3).

As mentioned previously procedural safeguards protect against arbitrary or capricious actions by those in whom discretionary power is vested.

■ The authority and powers bestowed to the Secretary by § 6010 to adopt rules and regulations are found to be in keeping with the spirit and purpose of the Water and Air Resources Act for its practical application subject to reasonable control by fixed legal principles. Under the circumstances, the delegation of authority is found to be a lawful and constitutional delegation of legislative powers.

## III

Defendant next contends that the charges made against him involve a retroactive application of 7 *Del.C.* §§ 6003, 6013, resulting in a confiscatory taking of property without compensation in violation of the constitution of Delaware (Article 1, § 8), and the constitution of the United States (Fourteenth Amendment). Defendant's argument is, essentially, that the statutory sections retrospectively and unreasonably restrict his vested right to pursue a lawful business since they deprive him of a use to which his property was previously put—operation of a rendering plant without a permit from the Department of Natural Resources and Environmental Control.

This argument is without merit. These code sections neither impair vested rights nor apply retroactively. Legislation enacted under the police power for the general welfare which imposes reasonable regulations and restrictions on the use of private property does not deprive a person of his property in violation of due process. The permit requirement in 7 *Del.C.* § 6003 is precisely such legislation. No substantive right exists to use property in such a manner as to discharge air contaminants into the atmosphere where the law requires the owner to first obtain a permit. There is no vested right to continue causing injury to another even when such injury has occurred in the past.

"A retroactive or retrospective law, in the legal sense, is one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty or attaches a new disability in respect to transactions or considerations already past." 82 C.J.S. Statutes § 412

Neither of the Delaware Code sections (§ 6003 and § 6013), cited in the indictment indicate an intent to affect or limit vested rights which accrued before their enactment. Although the statute does impose the duty to obey an order by the Secretary to cease and desist and to obtain a permit before operating equipment which discharges air contaminants, such obligations arise only from transactions occurring after the enactment of the statute.

## IV

Defendant also contends that the indictment is invalid because it lacks essential allegations of the existence of acts which violate the regulations cited in the order to cease and desist. He argues that the order is unenforceable because there was no specified violation of the regulations relied upon therein and that a charge based upon non-compliance with a void order from the Secretary must be dismissed.

Two regulations are cited in the order: Regulation No. XIX § 2.1 reads:

"No person shall cause or allow the emission of an odorous air contaminant such as to cause a condition of air pollution."

Regulation No. II, § 3.1 reads in pertinent part:

"No person shall initiate construction, install, alter, or initiate operation of any equipment or facility or air contaminant control device which will emit an air contaminant prior to receiving approval of his application from the Department . . ."

Defendant's first argument is that the indictment failed to allege that a request for written registration of air contaminant sources had been made. He mistakes Regulation No. II, § 2.1 for Regulation No. XIX, § 2.1. Regulation No. II is not applicable.

Defendant's second argument is that the indictment fails because it lacks an allegation that construction, installation, alteration or operation of any equipment . . . which will emit an air contaminant has been "*initiated.*" He attempts to distinguish "initiation of operation" from "continuance of an existing operation." The regulation must not be so narrowly construed. As said in *State v. Getty Oil Company*, Del.Super., 305 A.2d 327, 331 (1973), Regulation No. II "is concerned with the start-up, shut-down, and general operation of existing equipment that emits or might emit air contaminants." The terms of the indictment indicate violation of both Regulation No. II, § 3.1, and Regulation No. XIX, § 2.1.

\*    \*    \*    \*    \*    \*

For the reasons stated, the defendant's motion to dismiss the indictment is denied and the case will be scheduled for trial.

IT IS SO ORDERED.