In the Matter of an Appeal of the DE-PARTMENT OF NATURAL RE-SOURCES AND ENVIRONMENTAL CONTROL of the State of Delaware and the Commissioners of the Town of Slaughter Beach from the Decision of the Wetlands Appeals Board of January 26, 1978.

Superior Court of Delaware,
Sussex County.

Submitted Aug. 24, 1978.

Decided Nov. 21, 1978.

June D. MacArtor, Deputy Atty. Gen., Dept. of Justice, Wilmington, for the De-

partment of Natural Resources and Environmental Control of the State of Delaware.

John Terence Jaywork, Dover, for The Town of Slaughter Beach.

Randy J. Holland, of Dunlap, Holland & Eberly, Georgetown, for Randy E. and Harvey G. Marvel.

WALSH, Judge.

In this appeal from a decision of the Wetlands Appeals Board (Board), the Court is required to rule upon the respective powers of the Secretary of the Department of Natural Resources and Environmental Control (Department) and the Wetlands Appeals Board to regulate activities of owners of property designated as "wetlands" under the aegis of the Delaware Wetlands Act (7 *Del.C.* Ch. 66). The property in question is located in the Town of Slaughter Beach, Sussex County, and consists of 13 acres of a 70 acre tract which the appellees, Randy E. Marvel and Harvey G. Marvel, Jr. (the Marvels), seek to develop for residential purposes. The Town of Slaughter Beach appeared before the Board in support of the Department's denial of a fill permit and is an appellant in this Court.

The Delaware Wetlands Act, which became effective July 13, 1973, has for its stated statutory purpose, "the preservation of the coastal wetlands" and their protection from "despoliation and destruction consistent with the historic right of private ownership of lands" (7 *Del.C.* § 6602). To this end, the Act designates certain "activities" in the wetlands, including filling, as subject to the authority of the Department, which may permit those activities only upon the consideration of specific environmental, aesthetic and economic factors set forth in 7 *Del.C.* § 6604.[1] In addition to his permit power, the Secretary is extended general administrative authority to inventory the wetlands; adopt wetlands designations, after public hearing, and promulgate regula-

tions "controlling or prohibiting activities" on wetlands. [7 *Del.C.* § 6607(d)(3)] In apparent implementation of his regulatory power the Secretary adopted Regulation 2.01 D, which provides:

"No permit will be issued to deposit permanently any spoils or other materials including any biodegradeable material on wetlands unless such deposit is part of a project, approved by DNREC, of planned restoration or creation of wetlands."

The Marvels, who had acquired the subject tract in 1973, commenced development of their property through lot subdivision in 1976, and began placing fill in areas of lower elevation. Upon being advised by the Corps of Engineers of the need to secure both Federal and State permits to place fill in the 13 acre segment, the Marvels submitted an application for a fill permit, with supporting technical data as required by the Department's regulations. On May 9, 1977, the Marvels were advised by the Secretary that their request was deemed a "violation of Regulation 2.01 D" and "therefore cannot be approved". This decision was promptly appealed to the Board.

The Wetlands Appeals Board, consisting of seven members, is empowered to "affirm or reverse the decision of the Secretary". If the decision under review concerns a permit, the Board is required to hold a public hearing. The Board conducted such a hearing on August 17, 1977, heard testimony from 30 witnesses and received written statements from members of the public. The Board permitted a wide range of evidence touching not only the ecological and economic merits of the Marvel application but the legislative and regulatory intent of the Act.

In a written opinion, a bare majority of the Board concluded that Regulation 2.01 D, as promulgated by the Secretary, was "beyond the purpose and intent of the Act" and "should be null and void", since it was the intent of the General Assembly that all

---

1. The Act exempts from the permit requirements certain specific activities not here under consideration: Mosquito control activities; navigational aids; duck blinds; foot bridges; boundary stakes; wildlife nesting structures; grazing of domestic animals; haying; hunting, fishing and trapping. (7 *Del.C.* § 6606)

permit applications should be tested, at the Departmental level, by the statutory factors set forth in 7 *Del.C.* § 6604. The majority then proceeded to conclude, by apparent application of the statutory factors, that the economic and social benefits which will accrue from the proposed development of the property "far outweighed" any negative environmental impact. The majority also determined that the 13 acre site constituted "minimal or limited value wetlands whose best use is monitored development". The three Board members who dissented concluded that Regulation 2.01 D was a proper administrative implementation of the legislative purpose and had been properly applied by the Secretary. The minority further concluded that the Board should not address the merits of the application.

Both the Department and the Town of Slaughter Beach have appealed the majority ruling. They assert that the Board exceeded its authority in striking down the regulation, but, in the event it is determined that the Board properly heard the merits of the appeal, the Board's finding of permissible use lacks substantial evidential support. To the contrary, the Marvels argue that the Board properly determined that Regulation 2.01 D was a nullity and having so determined was entitled to view the merits of the application incident to its reversal of the Secretary's decision.

 Though the parties to this appeal have argued the merits of the fill permit in terms of the evidence presented to the Board, it is obvious that the threshold determination here, as before the Board, is whether the Secretary's adoption of Regulation 2.01 D was a proper exercise of administrative authority conferred by the Act. While the legislative power resides, in plenary form, in the General Assembly, as Article II, § 1 of the Delaware Constitution recites, it is recognized that the legislature may declare policy and announce legislative principles which shall apply in certain cases but delegate to an administrative body the authority to apply those principles in factual situations as they arise. *In Re Opinion of the Justices,* Del.Supr., 246 A.2d 90 (1968). *State v. Braun,* Del.Super., 378 A.2d 640 (1977); *Carroll v. Tarburton,* Del. Super., 209 A.2d 86 (1965). Moreover, where the discretion to be applied at the administrative level involves the exercise of the police power, *i. e.,* the protection of public morals, health and safety, the delegation of legislative authority may be cast in general terms. *State v. Braun, supra; State v. Durham,* Del.Super., 191 A.2d 646 (1963). Given the express legislative purpose of the Wetlands Act and the legislative enjoiner to afford it a liberal construction to achieve its ends (§ 6619), the authority of the Secretary must be accorded wide latitude.

Under the most indulgent view, however, the actions of the Secretary must not blanketly prohibit what the statute permits, even conditionally, else the administrative action becomes arbitrary and capricious. The Act is a far-reaching effort to regulate every wetland use in order to preserve and protect a valuable natural resource. But the Act does not purport to accomplish, by legislative fiat, a total denial of wetland activities. It exempts certain activities from any type of regulation, under § 6606, and permits others to become "authorized" through Departmental approval. The statutory scheme is one of regulation and § 6604 contemplates the application of stated criteria by the Secretary in weighing the merits of requested activities. The Department argues that Regulation 2.01 D is a proper implementation of the Secretary's power "prohibiting activities on lands", set forth in § 6607(d)(3). The language of § 6607(d)(3) permitting the Secretary to prohibit activities cannot be read as a separate delegation of authority to deny uses without application of the statutory criteria. References to the Secretary's duty to adopt regulations concerning "the processing of permit applications and the conduct of hearings" (§ 6607(d)(1)); the elaboration of standards "consistent with § 6604" by which each permit will be reviewed and the specific procedure for notice and hearings set forth in § 6608 and § 6609 are completely at variance with the assertion that the

Secretary may by simple regulation refuse to consider an application by a property owner to engage in an authorized activity. Indeed, the only difference between an activity and an authorized activity, under the Act, is the securing of the permit. Although Regulation 2.01 D refers only to "filling" of wetlands, if the Department's position is correct the Secretary is equally entitled to prohibit by regulation any other activity listed in § 6603(1). Such a result is obviously at variance with the legislative intent evidenced by the elaborate permit process.

■ The authority of the Secretary to adopt regulations consistent with the legislative intent is not in question. But the Secretary may not, under the guise of his regulatory authority foreclose the permit securing process and the application of the statutory criteria set forth in § 6604. To hold otherwise would be to give the Secretary the power to prevent, permanently, any activity in a wetlands area simply through the designation process as opposed to the permit process. An administrative agency may not adopt regulations which are inconsistent with the provisions of the enabling statute or out of harmony with, or extend the limits of, the Act which created it. *Wilmington Country Club v. Delaware Liquor Com'n.,* Del.Super., 91 A.2d 250 (1952); *Mayor, Etc., of Baltimore v. William E. Koons, Inc.,* 270 Md. 208, 310 A.2d 813 (1973).

While it is true that the designation of wetlands is also subject to public hearing and appeal, the mere designation does not, under the statute, preclude a later use if a permit may be secured. Again, the effect of Regulation 2.01 D would be to foreclose a property owner, content with the initial designation of wetlands, from later seeking permission to engage in filling if he could satisfy the statutory criteria.

■ To the extent that it is here determined that Regulation 2.01 D precludes a permit application under § 6604 and § 6608, and is thus contrary to the legislative intent, this Court is in agreement with the Board's majority opinion. But the Board's action in deciding the merits of the application without affording the statutory scheme to operate at the Departmental level cannot be sustained. The Board's authority is limited to affirming or reversing the decision of the Secretary. The Secretary, of course, did not pass upon the merits of the permit application but merely determined that a request for filling wetlands was a violation of Department regulations.[2] Thus, the only issue for Board review, was the applicability of the regulation. If it be assumed that the Board has the authority to reverse the Secretary on a ruling of law, an assumption which appellants dispute, once it had so determined, no other matter was before it for review. The Secretary did not purport to pass upon the merits of the application in terms of the statutory criteria and there was, thus, no decision on the merits which the Board could either affirm or reverse. In proceeding to evaluate the merits of the application, the Board became the first level of adjudication and deprived the appellate process of the Department's informed input concerning the statutory criteria. In so doing, the Board exceeding its authority which is statutorily fixed and not subject to improvisation. *Delaware Re. Est. Com'n v. Patterson-Schwartz & As. Inc.,* Del.Supr., 344 A.2d 242 (1975); *State v. Berenguer,* Del.Super., 321 A.2d 507 (1974).

■ A further consideration which requires reversal of the Board's ruling on the merits, involves the unique functioning of the Superior Court in appeals from the Board under the Wetlands Act. Section 6613 of the Act permits this Court to determine, on appeal from the Board, whether the action appealed from "constitutes a taking without just compensation". If so, the Court may invalidate the order, unless the Secretary consents to a reversal or modifi-

---

**2.** Strictly speaking, the regulation does not prohibit all filling of wetlands, since restoration or creation of wetlands is exempted but, for present purposes, the regulation amounts to a blanket denial of the right of a private owner of wetlands to change them to any other use through filling.

cation "of his decision." Under the statute, however, the Secretary may persist in his decision and, within two years from the determination of "taking without just compensation" seek to acquire the property through condemnation. This unusual procedure presupposes an initial decision by the Secretary, adverse to the property owner, which is ultimately upheld by this Court, but which is determined to have deprived the property owner of a compensable right. Presumably, such a result could flow from a denial of the right to place fill on wetlands. If a denial by the Secretary were based on his regulatory position, as distinguished from his administrative functioning under § 6604, it is difficult to envision how the Secretary could consent to a reversal or a modification of his action. Moreover, if, as here, the Board makes the first level adjudication on the merits and such an adjudication is adverse to the property owner, the Secretary is similarly handicapped in exercising the choices available to him under § 6613. In any event, if the Act is to have full play, its sequence must be accommodated by permitting the Secretary to take an initial position on the merits of the activity permit, with authority of the Board to reverse or affirm that action, followed by appeal to this Court, if required.

In view of the result here reached, it is unnecessary to deal with the question of whether there was substantial evidence presented to justify the Board's determination that a permit should issue, but the Board's employment of the concept of "minimal or limited value wetlands" to uphold the permit is deserving of comment for future guidance. The Act makes no attempt at gradation of wetlands and the Secretary is given no option to establish categories of wetlands. It is, of course, expected that the impact of the statutory criteria for granting permits may vary between locations, but there is no lesser standard to be applied. Regulations may vary "from area to area" as § 6607(d)(3) provides, but the wetlands designation is statutorily protected and any activity must be judged by the criteria set forth in § 6604.

For the reasons stated, the decision of the Wetlands Appeals Board is reversed with direction to remand the matter to the Secretary to consider the application for a permit on its merits in accordance with statutory standards.

IT IS SO ORDERED.