Patrick L. BROWN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 10, 1998.

Supreme Court of Delaware.

Submitted: Feb. 9, 1999.
Decided: April 6, 1999.

John F. Brady, Office of the Public Defender, Georgetown, Delaware, for appellant.

Kim Ayvazian, of the Department of Justice, Georgetown, Delaware, for appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER (constituting the Court en Banc).

HOLLAND, Justice:

Patrick L. Brown ("Brown") was indicted on July 15, 1996, in connection with a robbery and shooting incident that occurred on May 9, 1996. Brown's jury trial commenced on May 28, 1997, based upon an 18 count indictment. Brown was convicted of 13 of the 18 counts. On December 8, 1997, Brown received a total sentence of 26 years and 30 days at Level V, with portions suspended for lower levels of supervision. This is Brown's direct appeal of his convictions.

Brown has raised three issues on appeal. First, Brown submits that the Superior Court erred in failing to dismiss the conspiracy counts because the indictment did not allege an overt act. Second, Brown contends that the Superior Court denied him his Sixth Amendment right to present defense witnesses by sustaining those witnesses' invocation of their Fifth Amendment right against self-incrimination. Third, Brown contends that the Superior Court erred by failing to give the jury a specific unanimity instruction.

This Court has carefully considered each of Brown's arguments. We have concluded that no reversible error occurred during Brown's proceedings in the Superior Court. Accordingly, the judgments of the Superior Court are affirmed.

### Crime Scene

In the predawn hours of May 9, 1996, four individuals wearing ski masks broke into the home of Zara and Kelvin Grambell near Bridgeville, Delaware. In addition to the Grambells, Zara Grambell's two sons Danielle and Harrell Richards, and her two nephews Danny Parker and Ronnelle Jones were present at the Grambell residence. The victims testified that: the individuals were armed with handguns; demanded money and drugs; physically assaulted some of those present; and fired several shots within the home. Ronnelle Jones was shot in the leg after $100 was taken from him. Danielle Richards and Ronnelle Jones described the assailants' car as a white Dodge.

### Apprehension and Indictment

Later that morning, at approximately 4:00 a.m., a Delaware State Trooper was traveling on County Road 213 near Ellendale when he noticed a white Dodge automobile, which fit the description of the one involved in the Grambell incident, stuck in the mud. Brown and co-defendants Charles Turner ("Turner"), Lester and Charles Hickman ("The Hickmans") and Jerry Henry ("Henry") were trying to free the Dodge. Brown, who was wearing a pull-down ski mask, became verbally abusive toward the State Trooper. The State Trooper placed Brown under arrest for disorderly conduct.

During an inventory search of the car, two rounds of .22 caliber ammunition were found.[1] Turner was arrested and gave a statement implicating Henry and the Hickmans in the Grambell incident. When Henry was arrested, he gave a statement implicating Turner, the Hickmans and Brown in the incident.

In these statements, Brown's co-defendants indicated that, prior to the Grambell incident, Brown directed Turner, the driver, to a house where an alleged drug dealer named Jerome lived ("the Jerome incident"). Brown allegedly told Turner and the other co-defendants to rob Jerome. Henry refused because there were people present who knew him. After that, Brown allegedly ordered the others to the Grambell residence.

The Hickmans, Turner, Henry and Brown were subsequently indicted on numerous charges related to the Grambell incident. The amended indictment charged Brown with the following criminal

---

1. The car was registered to Turner's mother, Meredis Turner, who indicated that Turner had the car without her permission.

offenses: Attempted Robbery in the First Degree (three counts); Burglary in the First Degree; Possession of a Firearm During the Commission of a Felony (four counts); Conspiracy in the Second Degree (four counts); Criminal Mischief; Robbery in the First Degree; Kidnaping in the Second Degree; Assault in the First Degree; Disorderly Conduct; and Possession of a Firearm by a Person Prohibited.

### Co–Defendants' Plea Agreements

All of the defendants, except Brown, entered guilty pleas pursuant to agreements with the State. Turner and Henry agreed to enter guilty pleas to certain charges while others would be *nolle prossed.* They also agreed to testify on behalf of the State at the trial of any co-defendants. The plea agreements stated that their sentences would be imposed after they testified and provided for no more than five years of incarceration, if they testified truthfully.

Lester Hickman entered guilty pleas and, prior to Brown's trial, received a sentence of five years. Charles Hickman entered guilty pleas and, after a presentence investigation, received a maximum incarceration of four and one-half years. The plea agreements of the Hickmans did not require them to testify for the State against any co-defendants nor did it condition their sentences on the nature of any trial testimony.

### Trial Witnesses Invoke Fifth Amendment

At trial, Turner and Henry testified for the State, alleging that Brown participated in the Grambell incident. Henry testified about the Jerome incident as follows: that Brown instructed Turner to drive to Jerome's home; once there Brown directed Henry to rob the occupants; and Henry refused so they proceeded to another location. Turner did not testify about the Jerome incident.

Brown called both of the Hickmans as defense witnesses to contradict the testimony of Henry regarding the Jerome inci-

dent. When asked whether they were with Brown and the other co-defendants on the night of May 8, 1996, both Hickmans invoked their Fifth Amendment privilege against self-incrimination. The Superior Court did not compel their testimony, and the Hickmans were excused.

### Brown's Convictions

At the close of the State's case, Brown moved for a judgment of acquittal with respect to the counts alleging conspiracy, claiming that the State had failed to identify a specific overt act. He made a similar application to dismiss the deadly weapons counts as overly vague because they each alleged two offenses as the predicate felony connected by the term "and/or." The Superior Court denied both applications.

Brown was convicted of the following criminal offenses: Attempted Robbery in the First Degree (one count); Robbery in the First Degree (one count); Conspiracy in the Second Degree (four counts); Possession of a Firearm During the Commission of a Felony (four counts); Burglary in the First Degree (one count); Assault in the Second Degree as a lesser-included offense of Assault in the First Degree and Disorderly Conduct. Brown was acquitted of two counts of Robbery in the First Degree, one count of Attempted Robbery in the First Degree, Kidnaping in the Second Degree and Criminal Mischief. The charge of Possession of a Firearm by a Person Prohibited was dismissed at the close of the State's case.

### Indictment Challenge Untimely

■ Brown's first claim of error is that the indictment was fatally defective in that it failed to specify a specific overt act in each conspiracy count. An indictment performs two functions: to put the accused on full notice of what he is being called upon to defend; and to effectively preclude subsequent prosecution for the same offense. *Malloy v. State,* Del.Supr., 462 A.2d 1088, 1092 (1983). These functions

are fulfilled if the indictment contains a plain statement of the elements or essential facts of the crime. *Id.;* Super.Ct.Crim.R. 7(c).

■ A motion based upon a defect in the indictment must be raised prior to trial. Super.Ct.Crim.R. 12(b)(2). Like the defendant in *Malloy,* however, Brown challenged the indictment in a motion for judgment of acquittal under Superior Court Criminal Rule 29(a) rather than a pre-trial application. " 'Such a long delay in raising the issue suggests a purely tactical motivation of incorporating a convenient ground of appeal in the event the jury verdict went against the [defendant].' " *Id., quoting United States v. Pheaster,* 9th Cir., 544 F.2d 353, 361 (1976). We have concluded that because Brown failed to raise this contention in a pre-trial motion, it was not properly preserved for appeal and thus was waived. *Malloy v. State,* 462 A.2d at 1092.

### Fifth Amendment Rulings Upheld

Brown's second argument is that the Superior Court failed to properly balance his Sixth Amendment right to call a witness against the Hickmans' Fifth Amendment privilege against self-incrimination. The United States Supreme Court has held that the trial court must determine whether a witness invoking his or her Fifth Amendment privilege "is confronted by substantial and 'real', and not merely trifling or imaginary hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). This Court followed the reasoning of *Marchetti* in holding that a witness who has entered into a plea bargain with the State does not necessarily relinquish his or her Fifth Amendment rights. *See Zebroski v. State,* Del.Supr., 715 A.2d 75, 80–81 (1998).

Brown argues that the Superior Court erred in sustaining the Hickmans' invoca-

tion of their Fifth Amendment rights because the Hickmans had no justifiable fear of self-incrimination. Brown bases that contention on the fact that the Superior Court had already sentenced Lester Hickman regarding the Grambell incident and that Charles Hickman had pled guilty and negotiated a maximum cap on the State's recommended sentence in his plea agreement. We have concluded that this argument is without merit.

■ A criminal defendant has the right to compulsory process to obtain the appearance of witnesses to testify on his behalf. U.S. Const. amend. VI; Del. Const. art. I, § 7. When a defendant's Sixth Amendment right to compulsory process conflicts with the witness's proper invocation of his or her Fifth Amendment right against self-incrimination, the witness's Fifth Amendment right prevails, forcing the defendant to go to trial on less than all the possible evidence. *United States v. Anderson,* D.Del., 391 F.Supp. 68, 71 (1975). Accordingly, the trial court must first determine whether the witness can substantiate a Fifth Amendment claim.

■ A witness cannot avoid interrogation by claiming that "his answers may tend to incriminate him." *Steigler v. Insurance Co. of North America,* Del.Supr., 306 A.2d 742, 743 (1973). "It is for the [trial court] to decide whether the question, after actually being put, is such that any direct answer thereto could reasonably be self-incriminatory." *Id., citing Mumford v. Croft,* Del.Supr., 93 A.2d 506 (1952).[2] The trial court must determine whether a witness invoking his or her Fifth Amendment privilege "is confronted by substantial and 'real', and not merely trifling or imaginary hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). The fact that a witness has entered into a plea bargain with the State

**2.** The record reflects that after the Superior Court's initial ruling, Brown's trial attorney

did not ask anymore questions.

does not mean that the witness has lost the right to invoke his or her Fifth Amendment privilege against self-incrimination. *Zebroski v. State,* Del.Supr., 715 A.2d 75, 80–81 (1998). Other jurisdictions that have considered the question of a witness' possibly incriminating testimony in the period between pleading guilty and sentencing have uniformly held that a defendant's right to compulsory process does not override the witness' Fifth Amendment privilege. *See United States v. Kuku,* 11th Cir., 129 F.3d 1435, 1437 (1997); *United States v. De La Cruz,* 1st Cir., 996 F.2d 1307, 1312–13 (1993); *United States v. Hernandez,* 5th Cir., 962 F.2d 1152, 1161 (1992); *United States v. Lugg,* D.C.Cir., 892 F.2d 101, 103 (1989).

■ Lester Hickman had pled guilty and received a sentence with respect to the Grambell incident. The Superior Court stated that Lester Hickman could not avoid testimony on the facts of the incident for which he had been sentenced. Lester Hickman did not plead guilty to or receive a sentence for any charges in connection with the Jerome incident. Since Brown called the Hickmans to refute the testimony of Henry regarding the Jerome incident, Lester Hickman was entitled to invoke the Fifth Amendment because his plea agreement and sentence did not extend to the alleged Jerome incident.

Although Charles Hickman had pled guilty pursuant to a plea agreement, his sentencing had not taken place. This Court has held that the Fifth Amendment protection against self-incrimination remains available for a witness who has entered into a plea agreement but has not been sentenced. *Zebroski v. State,* 715 A.2d at 80. We did so because the obligation to testify "arose at a time when the agreement was still susceptible to being nullified upon the occurrence of either of two alternative events: (1) a breach of the plea agreement by the State or (2) a refus-

al on the part of the court to accept the plea agreement." *Id.*

■ We hold that the Superior Court properly sustained the invocation of their Fifth Amendment rights by both Hickmans. Lester Hickman's concern about self-incrimination was real and substantial. Charles Hickman's plea agreement was still subject to possible rejection or reconsideration either by the State or the Superior Court. In addition, neither plea agreement covered the alleged Jerome incident.

*No Plain Error*
*Specific Unanimity Instruction Not Requested*

■ Finally, Brown alleges that the Superior Court erred in failing to give a specific unanimity instruction. A general unanimity instruction, such as was given in Brown's case, is usually sufficient to insure that the jury is unanimous on the factual basis for a conviction. *Probst v. State,* Del.Supr., 547 A.2d 114, 120 (1988). A more specific unanimity instruction is required however " 'if (1) a jury is instructed that the commission of any one of several alternative actions would subject the defendant to criminal liability, (2) the actions are conceptually different and (3) the state has presented evidence on each of the alternatives.' " *Id.* at 121, *quoting State v. Edwards,* 10 Conn.App. 503, 524 A.2d 648, 653 (1987).

The record reflects that the indictment grouped the charges against Brown into subsets that corresponded with the four victims: Zara Gambrell (Counts 2 through 6); Ronelle Jones (Counts 7 through 10); Harrell Richards (Counts 11 through 13); and Danny Parker (Counts 14 through 17).[3] Each subset of charges included a firearm offense (Counts 4, 9, 12 & 16), and a Conspiracy Offense in the Second Degree (Counts 5, 10, 13 & 17). The substan-

---

**3.** Count 1 charged Brown with Possession of a Deadly Weapon by a Person Prohibited, and was dismissed at the close of the State's case.

Count 18, Disorderly Conduct, pertained to the subsequent incident in Ellendale involving the State Police officer.

tive felony offenses pertaining to Ronelle Jones were Robbery in the First Degree (Count 7) and Kidnaping in the Second Degree (Count 8). The substantive felony offense pertaining to Harrell Richards was Attempted Robbery in the First Degree (Count 11). The substantive felony offenses pertaining to Danny Parker were Robbery in the First Degree (Count 14) and Assault in the First Degree (Count 15).

At the close of the State's case, Brown moved for a judgment of acquittal on, *inter alia,* Count 4, arguing that the disjunctive language of the charge, "attempted robbery and/or burglary" was "insufficiently vague," and that the State's failure to specify the underlying felony justified dismissal of the count. The Superior Court denied the motion, ruling that: there was sufficient evidence of both attempted robbery and burglary; and, the defense had received sufficient notice because the charges were all based upon a single incident.

Brown did not take an exception to the instructions given by the Superior Court prior to the jury retiring to deliberate. The jury later sent out a note requesting "clarification as to the interpretation of and/or" in the firearm counts. Brown objected to the Superior Court's supplemental instruction by referring to his previous objection.[4]

 Brown contends that the Superior Court's general unanimity instruction and supplemental instruction did not eliminate the jury confusion which he continues to assert resulted from the "and/or" language of the indictment. Brown did not request the Superior Court to give a specific unanimity instruction to the jury. Therefore, in this appeal, Brown has the burden of demonstrating that plain error occurred and affected his substantial rights. Supr. Ct.R. 8; Super.Ct.Crim.R. 30, 52(b). *See*

*United States v. Olano,* 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

Brown contends that there was a "high likelihood" that some jurors concluded that firearm possession was proved during the commission of one of the alleged felonies, while others concluded that it was committed during the commission of the other alleged felony, resulting in a non-unanimous verdict. We have assumed *arguendo* that the Superior Court should have given a specific unanimity instruction to the jury, if it had been requested by Brown's attorney at trial. We have concluded, nevertheless, that the verdict in Brown's case demonstrates that the jury was not confused and that Brown's substantial rights were unaffected by that omission.

Brown was found guilty of Counts 2 and 3, Attempted Robbery in the First Degree and Burglary in the First Degree, the two underlying felonies in the firearm offense relating to Zara Gambrell (Count 4). Since the jury's verdict was unanimous on both underlying felonies, the conviction of Possession of a Firearm During the Commission of Attempted Robbery and/or Burglary in Count 4 was undoubtedly based upon the jury unanimously finding that Brown possessed a firearm both during the attempted robbery and during the burglary. Under these circumstances, no prejudice to Brown could have resulted from the lack of a specific unanimity instruction. *See Grace v. State,* Del.Supr., 658 A.2d 1011, 1014 (1995).

Similarly, Brown was convicted of Counts 14 and 15, Robbery in the First Degree and Assault in the Second Degree as a lesser-included offense of Assault in the First Degree. These were the two alternative underlying felonies in the firearm offense relating to Danny Parker (Count 16). The jury's unanimous verdicts on the two underlying felonies demonstrate that no plain error occurred at trial.

---

4. In response to the note, the Superior Court further instructed the jury that " 'and/or' simply means you must find one of two enumer- ated offenses were committed by the defendant or someone you have determined was his accomplice."

The jury acquitted Brown of Attempted Robbery in the First Degree of Richards (Count 11). The related firearm count charged Brown with Possession of a Firearm During the Commission of an Attempted Robbery and/or Kidnaping. The State acknowledges that the inclusion of kidnaping as an underlying felony in Count 12 appears to be an error in drafting the indictment. The record reflects there was no evidence presented at trial that Richards had been kidnaped and the State did not argue to the jury that Richards had been kidnaped. Since the State presented no evidence of any kidnaping of Richards, there was no need for a more specific unanimity instruction on Count 12. *See Probst v. State,* 547 A.2d at 121. The "and/or kidnaping" language in Count 12 of the indictment was unfortunate surplusage but did not prejudice Brown's rights. *See McDade v. State,* Del.Supr., 693 A.2d 1062, 1064–65 (1997); *Grace v. State,* 658 A.2d at 1015.

Brown was acquitted of the underlying felonies alleged in Count 9 (Robbery in the First Degree) and Count 12 (Kidnaping in the Second Degree) regarding Jones and Attempted Robbery in the First Degree of Richards. It is well-established that convictions need not be responsive to integrated counts in a multi-count indictment. *Tilden v. State,* Del. Supr., 513 A.2d 1302, 1306 (1986), *citing* IV *Wharton's Criminal Procedure* § 574 (12th ed.1976). "If the inconsistency can be explained in terms of jury lenity, the convictions may stand." *Id., citing United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Powell,* the United States Supreme Court reaffirmed the rule that it had established in *Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), "which insulated jury verdicts from judicial review on the basis of inconsistency." *Tilden v. State,* 513 A.2d at 1306.

The State argued to the jury that Brown and his four co-defendants were responsible for the incident at the Gambrell residence. The jury was instructed generally on accomplice liability. The Superior Court's supplemental instruction was consistent with the State's accomplice theory. The jury heard testimony that Brown's co-defendants had each pled guilty to only three offenses: combinations of Robbery in the Second Degree, Attempted Robbery in the Second Degree, Burglary in the First Degree, Conspiracy in the Second Degree, and Possession of a Deadly Weapon During the Commission of a Felony.

The fact that Brown was acquitted of the underlying felonies alleged in Counts 9 and 12 can be explained in terms of jury lenity. The jury may have concluded that Brown was an accomplice to the offense alleged in Counts 7, 8, and 11, but then, as an exercise in jury lenity, acquitted him of those three felony offenses while finding him guilty of thirteen others. There is no requirement that a defendant be convicted of the underlying felony in order to uphold a firearm offense. *See Samuel v. State,* Del.Supr., No. 252, 1996, 1997 WL 317362, **1, Hartnett, J. (Apr. 16, 1997) (ORDER); *Brooks v. State,* Del. Supr., 367 A.2d 638, 640 (1976).

We hold that Brown has failed to demonstrate that any plain error occurred as a result of the Superior Court's failure to give *sua sponte* a specific unanimity instruction to the jury. Although there was not plain error in Brown's case, the disjunctive joinder of two distinct offenses in an indictment is not advisable. The Superior Court has held that an indictment using the term "and/or" is fatally flawed when it results in uncertainty. *State v. Getty Oil Co., Inc.,* Del.Super., 305 A.2d 327, 332 (1973). More recently, the Superior Court observed that the "disjunctive 'joinder' of two distinct offenses is a very problematical method of charging, rather than two distinct conspiracy counts, and is unwise and should be avoided." *State v. Baker,* Del.Super., 679 A.2d 1002, 1006 n. 2 (1996). We agree.

*Conclusion*

The judgments of the Superior Court are affirmed.