# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ELLEN WARREN, )

)

Appellant, )

v. ) C.A. No. K21A-11-001 NEP

)

DELAWARE DEPARTMENT OF )
HEALTH AND SOCIAL SERVICES, )
DIVISION OF DEVELOPMENTAL )
DISABILITIES SERVICES, )

)

)

Appellee. )

)

)

)

)

## MEMORANDUM OPINION AND ORDER

Submitted: February 17, 2022
Decided: May 24, 2022

*Upon Appeal from the Decision of the Merit Employee Relations Board*

**REVERSED and REMANDED**

Ellen H. Warren, Marydel, Delaware, *Appellant, pro se.*

Robert M. Kleiner, Esquire, Department of Justice, Wilmington, Delaware, *Attorney for Appellee.*

**Primos, J.**

Before this Court is the appeal of Ellen Warren (hereinafter "Warren") from the decision of the Merit Employee Relations Board (hereinafter the "MERB") finding that Warren's reassignment from data analyst to criminal evaluator neither violated applicable statutory law—by her employer's failure to consider seniority in the decision-making process—nor constituted age discrimination. The Appellee is the Department of Health and Social Services (hereinafter "DHSS"). A final order of the MERB (hereinafter the "Order") found that Warren, an employee of the State of Delaware, was "reassigned" to a different position within DHSS's Division of Developmental Disabilities Services (hereinafter the "DDDS") due to "duplication within DDDS divisions" and DHSS's decision to disband the DDDS's Data Systems and Analytics Unit (hereinafter the "Data Unit").[1] Warren alleges that her seniority was required to be taken into account when transferring her, and in addition that her transfer was motivated by age discrimination. For the following reasons, the Order is **REVERSED AND REMANDED.**

## I. PROCEDURAL AND FACTUAL BACKGROUND

Warren has been an employee of the State of Delaware since 1985.[2] This appeal deals with DHSS's decision to disband the Data Unit in 2020 and transfer Warren to a role with different responsibilities. In her previous role, Warren was a Program Evaluator in the Data Unit, although she was essentially functioning as a Management Analyst, similar to her co-workers. This was a fact that was known by DHSS and allegedly mentioned to Warren at the time of her transfer meeting.[3]

---

[1] Bd. Order at 2–3.

[2] *Id.* at 2.

[3] Warren testified, without any rebuttal from DHSS, that DHSS had considered her "to be functioning more as a Management Analyst than a Program Evaluator." Hr'g Tr. at 44:4–9; *see also id.* at 24:24–25:4 ("I was advised that the Administration considered that I had been doing Management Analyst work as a classification, job classification, as opposed to program evaluator work").

2

Warren's duties in the Data Unit included "tracking, analyzing and reporting service recipients who qualified for home and community-based waivers under the federal Medicaid system."[4] In her own words, her job was "data," and her role's title was more likely a function of the fact that the Management Analyst titles were new positions that did not exist at the time of her initial assignment.[5] Warren also testified that she helped maintain and develop a website.[6]

When DHSS decided to disband the Data Unit due to duplication, they reassigned Maria Winder, a younger co-worker[7] of Warren within the Data Unit, to a different data role in August 2020.[8] Warren retained her role through early September, and trained Winder and other employees in order for them to assume some of her responsibilities.[9] In September 2020, Warren was transferred to a new role to conduct "patient abuse investigations"[10] as a Developmental Disabilities Program Evaluator in the Office of Incident Resolution (hereinafter "OIR") in the Services Integrity Enhancement Unit (hereinafter "SIE") within the DDDS. Her new position entailed a substantial amount of driving[11] and conducting interviews, that is, it required her to "get out in the field."[12] Essentially, Warren went from having a

---

[4] Bd. Order at 2; Hr'g Tr. at 18–19.

[5] Hr'g Tr. at 45:3–10.

[6] *Id.* at 21:8–11.

[7] At the time of Warren's transfer, Winder was 55 years old, and Warren was 65 years old. Bd. Order at 3.

[8] Hr'g Tr. at 46:7–8.

[9] *Id.* at 24:17–23 ("I was told that I would be training the individuals who would be taking over the work that I was doing. It wasn't that the work went away. And I did end up training seven, I believe, individuals in the work that I had been accomplishing."); *id.* at 38–40 (describing the people Warren trained to do the things for which she "had primary responsibility" in her original position).

[10] *Id.* at 23:8–10.

[11] She testified that her new job "requires statewide travel," and that she has experienced difficulty performing her job because she cannot drive more than an hour a day without experiencing pain. *Id.* at 49:12–15.

[12] *Id.* at 47:4–5.

3

desk job as a data analyst to being an investigator working outside the office to a significant extent.

Warren went through the three-step process of filing a grievance concerning her transfer, and at each step the grievance was denied.[13] The MERB held a hearing on September 2, 2021, and the members voted unanimously to deny her grievance. She then filed her notice of appeal with this Court. The Court has reviewed the full record below, accompanied with all subsequent briefings, and this appeal is ripe for decision.

## II. STANDARD OF REVIEW

On appeal from an administrative board's final order, this Court must determine whether the board's findings are supported by substantial evidence and are "free from legal error."[14] The Court does not weigh the evidence or make its own factual findings—rather, it determines if the evidence was adequate to support the administrative board's factual findings.[15] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] Under the substantial evidence standard, the Court must "search the entire record to determine whether, on the basis of all of the testimony and exhibits before the [board], it could fairly and reasonably reach the conclusion that it did."[17] In addition, the Court must view the record in the light most favorable to the prevailing party.[18] However, the Court's deference to the board's decision is not "altogether without

---

[13] The Step hearings were held between September 22, 2020, and December 22, 2020. *See* DHSS Answering Br. at 3.

[14] *Optima Cleaning Sys. v. Unemployment Ins. Appeal Bd.*, 2010 WL 5307981, at *2 (Del. Super. Dec. 7, 2010).

[15] *Id.* (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[16] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[17] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674-75 (Del. Super. 1980) (citing *Winship v. Brewer School Comm.*, 390 A.2d 1089, 1092-93 (Me. 1978)).

[18] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1259 (Del. 2013).

4

teeth,"[19] and the Court need not "defer to findings that are not rationally supported by substantial evidence in the record."[20]

With respect to questions of law, the Court's review is *de novo* to determine "whether the [b]oard erred in formulating or applying legal precepts."[21] Hence, if the administrative board's decision is free from legal error and supported by substantial evidence, it must be affirmed.[22]

## III. DISCUSSION

### A. The MERB committed legal error when it failed to examine whether consideration of Warren's seniority was required pursuant to 29 Delaware Code § 5928 in connection with her transfer.

The Court will first address Warren's argument relating to the enabling statutes and the Merit Rules. Warren argues that when a change in position involves a "material change in duties," an employee's seniority must be considered pursuant to 29 *Del. C.* § 5928.[23] This Court has previously held that "[a]n administrative agency may not adopt regulations [or rules] which are inconsistent with the provisions of that agency's enabling statute, or which are out of harmony with, or extend the limits of the act which created the agency."[24] Moreover, the Delaware Supreme Court has held that "statutory interpretation is ultimately the responsibility

---

[19] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1217 (Del. 2015).

[20] *Id.* at 1222.

[21] *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug. 16, 2006), *aff'd*, 929 A.2d 783 (Del. 2007) (citing *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998); *Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1170 (Del. 1990)).

[22] *Motiva Enter. v. Sec'y of Dept. of Nat. Res. & Envtl. Control*, 745 A.2d 234, 242 (Del. Super. 1999).

[23] Warren's Opening Br. at 2 (D.I. 7, Dec. 22, 2021).

[24] *Ramsey v. State Dep't of Nat. Res. & Env't Control*, 1997 WL 358312, at *2 (Del. Super. Mar. 20, 1997), *aff'd*, 700 A.2d 736 (Del. 1997) (citing *Matter of Dep't of Natural Resources and Envtl. Control*, 401 A.2d 93, 96 (Del. Super. 1978)).

of the courts."[25] This Court "may accord due weight, but not defer, to an agency interpretation of a statute administered by it."[26]

At the MERB hearing, there seemed to be significant uncertainty regarding the appropriate designation of Warren's position change within the DDDS. The position change was alternately referenced as "transfer," "reassignment," "move," and "change" by both Warren and MERB members.[27] In the Order the position change was labeled both a "reassignment" and a "transfer," but ultimately deemed a "transfer" under the Merit Rules.[28]

The legal question presented to the Court is whether the enabling statute mandated that seniority be considered in DHSS's decision-making process as related to Warren's transfer. There are two statutory provisions dealing with transfer of Merit System employees.

The first of these provisions, 29 *Del.C.* §5925, states as follows:

The rules shall provide for transfer from a position in 1 department or agency to a similar position in another department or agency involving similar qualifications, duties, responsibilities and pay range.[29]

The second provision, 29 *Del.C.* §5928, provides as follows:

The rules shall provide for layoffs, transfers or reduction in rank because of lack of funds or work, or abolition of a position, or material change in duties or organization and for reemployment of employees so laid off, giving consideration in each such case to **performance record and seniority in service**.[30]

---

[25] *Pub. Water Supply Co. v. DiPasquale*, 735 A.2d 378, 382 (Del. 1999).
[26] *Id.*
[27] Hr'g Tr. at 56:5–8 ("I'll accept—whether it's transfer, re-assignment, change, move, I'm not going to get hung up on that."); *see id.* at 30 (referring to the change in Warren's position as either a reassignment, a transfer, or a move).
[28] Bd. Order at 4 (explaining that DHSS's decision to move Warren from the Data Unit to OIR "was a transfer under Merit Rule 10.6").
[29] 29 *Del.C.* § 5925.
[30] 29 *Del.C.* § 5928 (emphasis supplied).

6

Thus, Section 5925 allows transfers between similar positions in different departments or agencies without any mandated considerations, while Section 5928 requires certain considerations when transfers are the result of specified conditions (that is, transfers due to "lack of funds or work," due to "abolition of a position," or due to a "material change in duties or organization"). Moreover, Section 5928 mandates that "performance record and seniority in service" **must** be "giv[en] consideration in each such case," thus, making clear that the consideration of "seniority" and "performance record" attaches to each potential form of employment movement described in Section 5928 without reservation. In Warren's case, the MERB never made a finding regarding whether either statutory provision applied to her transfer.

The Merit Rule that applies to Warren's position change is Merit Rule 10.6, which reads as follows: "To promote the efficiency of the service unrelated to employee performance, employees may be transferred to another position for which they meet job requirements in the same paygrade with the same agency with or without completion."[31] By its own terms, Merit Rule 10.6 does not fall under Section 5925, because Merit Rule 10.6 applies only to transfers to "another position . . . with the same agency," while Section 5925 applies only to transfers "to another department or agency." Section 5928 contains no such limitation.

During the MERB hearing there seemed to be ample discussion, and confusion, among the MERB members as to the role of seniority in the legal analysis.

> Ms. Warren: I think I'm struggling with that because the way I read the Rules is that the Delaware Code section says that transfers have to consider seniority and that should come before anything else.

---

[31] Merit R. 10.6, available at https://merb.delaware.gov/state-merit-rules/state-merit-rules-chapter-10/. The Merit Rules define "transfer" as "[a]ny movement between positions in the same paygrade as long as the employee meets the job requirements." Merit R. 19.0, available at https://merb.delaware.gov/state-merit-rules/state-merit-rules-chapter-19/ (cited in Warren's Opening Br. at 4).

Chairman Tupman: No. No. Even putting aside whether the statutes that you cite are—**I'll accept—whether it's transfer, re-assignment, change, move, I'm not going to get hung up on that. But what it says is that seniority just be taken into consideration.** It doesn't say that the most senior person shall get the position of his or her choice.

Dr. Jenkins: But . . . we even **have a hurdle before that hurdle.**

Chairman Tupman: I agree. I understand. I understand. But see, the discrimination issue is, in some ways, separate and distinct and in some ways linked. I think it is linked because if you don't buy her legal analysis about transfer of that statute and that sort of stuff, you could still say, Well, the fact that I'm more senior, and I didn't get the position is pretexual evidence that that was their real motive. But I agree with you that in terms of strict analysis, **we would have to cross that first threshold.**

Dr. Jenkins: Because I continue to struggle even before the seniority piece comes into play. I still haven't heard in this first hour what the adverse impact of this transfer—what was that. ... [Y]ou still have not been able to **articulate to us what is that claim based on.** And there continues to be the struggle.[32]

In the Order, the MERB only briefly addressed Warren's argument regarding seniority in the following footnote:

> Grievant also argues that DHSS should have considered seniority when arranging for the transfer. However, Merit Rule 10.6 does not include seniority as a factor to be considered for lateral transfers. Merit Rule 11.7 relating to Layoff factors in seniority, and Merit Rule 10.4 relating to Promotion cites to seniority as a factor to be considered.[33]

In its answering brief on appeal, DHSS argued somewhat differently:

> Per Merit Rule 10.6, an employee may be transferred to another position of the same paygrade within the same agency to promote efficiency. The agency need not consider the employee's seniority.

---

[32] Hr'g Tr. at 56–57 (emphasis supplied). Prior to this back-and-forth, Chairman Tupman stated that the seniority issue is "not dispositive unless everything else is inequitable." *Id.* at 42:6–8.

[33] Bd. Order at 4 n.9.

Appellant argues that Merit Rule 10.6 must include consideration of an employee's seniority to comply with 29 *Del. C.* § 5928. Appellant's interpretation of Section 5928 is misguided. Section 5928 concerns layoffs and "transfers or reduction in rank because of lack of funds or work," not reassignments between positions generally.[34]

Thus, the MERB in its Order failed even to acknowledge the enabling statute. DHSS on appeal, while acknowledging Section 5928, quoted only a portion of that statute.

The statements of the MERB and the arguments of DHSS to the contrary notwithstanding, the facts in the record point strongly toward the applicability of Section 5928 to this case. That provision applies to transfers resulting from, among others, "abolition of a position" or "material changes in duties or organization.[35] According to the MERB's Findings of Fact, Warren's transfer resulted from the disbanding of the Data Unit (and thus the "abolition" of all positions within that unit) and the reassignment of all employees in that unit to the SIE—thus involving a "material change" in both the "organization" of the DDDS and in the "duties" of at least one employee in the Data Unit, namely Warren.[36] Finally, as previously noted, Section 5928 requires that in "each such case" consideration be given to the transferred employee's "performance record and seniority in service."[37]

Therefore, the Court is left to review the argument raised by Warren both below,[38] and on appeal,[39] concerning whether DHSS must have considered her seniority in its decision-making process pursuant to Delaware law. A majority of the MERB members present at the hearing appeared to believe that there was a

---

[34] Answering Br. of DHSS at 7.
[35] 29 *Del.C.* §5928.
[36] Bd. Order at 2–3.
[37] 29 *Del.C.* §5928.
[38] Hr'g Tr. at 13–14.
[39] Warren's Opening Br. at 2–3.

9

"hurdle before that hurdle."[40]    The Court finds this to be legally incorrect. Accordingly, the Court is not persuaded that Section 5928 was followed here.

There is no doubt—no matter what diction is chosen to refer to Warren's transfer—that if the transfer met any of the conditions in Section 5928 (including transfer because of "abolition of a position" or transfer because of a "material change in duties or organization"), then seniority had to be considered. The DHSS representative testified explicitly that seniority was not considered:

> Q. [Warren]: Was seniority considered at all in the decision-making process?
> A. [DHSS Representative]: No.[41]

The same representative testified that the decision-making process leading to the decision to transfer Warren and the other two employees involved a "very basic review" of the qualifications of the three employees.[42] In addition, the MERB made a finding of fact that "[s]eniority was not considered when this transfer was implemented."[43]

Confusion may have arisen in the MERB's consideration of this issue because Merit Rule 10.6 does not explicitly refer to seniority or performance record. However, as mentioned previously, the rules cannot be "inconsistent" or "out of harmony" with the enabling statute.[44] Here, Section 5928 does not render Merit Rule 10.6 unenforceable as inconsistent with the enabling statute, but Section 5928 does require that, in the application of Merit Rule 10.6, DHSS consider seniority and performance record where a transfer results from certain precipitating circumstances, including abolition of a position or organizational or duty changes.[45]

---

[40] Hr'g Tr. at 56:15.
[41] *Id.* at 94:5–7.
[42] *Id.* at 91:17 to 92:2.
[43] Bd. Order at 4.
[44] *Ramsey*, 1997 WL 358312, at *2.
[45] The Merit Rules do not appear to address this specific situation. However, the language of Section 5928 is unambiguous. If a merit employee is to be transferred, reassigned, or moved into

10

This Court's "function" is not to make a determination of what potential disjunctive condition may have been applicable, as its review is constrained to the finding of facts below and it cannot make "its own factual findings and conclusions."[46] Accordingly, the Could holds that the MERB committed legal error by not properly analyzing Warren's arguments and failing to take into account the interaction between Section 5928, Merit Rule 10.6, and Warren's transfer. The matter will therefore be remanded to the MERB for further proceedings consistent with this opinion.

### B. The MERB committed legal error when it failed to apply correctly the standard for determining whether Warren had established a *prima facie* case of age discrimination.

The MERB also committed legal error in considering Warren's age discrimination claim. Specifically, the MERB found that the age discrimination claim failed because Warren had not made out a *prima facie* case.[47] However, the

---

a position as the result of the abolition of a position or material change in organization or employee duties, the employee's seniority and performance record must be considered in the employer's decision-making process.

[46] *Johnson*, 213 A.2d at 66.

[47] The Board's determination regarding Warren's *prima facie* case reads as follows:

> The Board concludes as a matter of law that the Grievant did not establish a *prima facie* case for age discrimination. The Age Discrimination in Employment Act forbids discrimination against individuals who are 40 years of age or older. There is no dispute that Warren is over 40 years old and that she was transferred to another unit within DHSS. However, the other two employees in the Data Unit, who are also older than 40, were also laterally transferred when the Data Unit was disbanded. There is no evidence in the record that they were treated more favorably than Ms. Warren.

Bd. Order at 5 (citations omitted).

It is not clear whether Warren is advancing her age discrimination claim under the federal statute, the Age Discrimination in Employment Act, 26 U.S.C. § 621 *et seq.* (hereinafter the "ADEA"), or the Delaware statute, the Delaware Discrimination in Employment Act, 19 *Del.C.* §710 *et seq.*(hereinafter the "DDEA"), which addresses age discrimination as well as other forms of discrimination. The MERB referred to the ADEA in its analysis of Warren's *prima facie* case but also cited the DDEA in a footnote, and later cited, as referenced below, to *Ennis v. Delaware Transit Corporation*, 2015 WL 1542151 (Del. Super. Mar. 9, 2015), which was decided under the DDEA. The distinction is of no matter, as the legal standards, including the test for a *prima facie*

11

MERB's analysis of this issue evinces a misunderstanding of the test for determining whether a *prima facie* case has been established. The appropriate test has been articulated by the Delaware Supreme Court in *Riner v. National Cash Register*[48] and repeated by this Court in multiple subsequent decisions.[49] To give the MERB a roadmap on remand, as to this issue, the Court provides the following guidance.

An age discrimination case requires, under the *McDonnell Douglas*[50] framework, that the plaintiff first establish a *prima facie* case. In order for Warren to establish a *prima facie* case of age discrimination against DHSS, she must prove the following facts: (1) that she was within the protected age group; (2) that she was qualified for the position in question; (3) that she suffered an adverse employment action;[51] and (4) that she was replaced (or effectively replaced) by a

---

case, are the same under both statutes. *See Riner v. Nat'l Cash Reg.*, 434 A.2d 375, 376 (Del. 1981) (adopting the elements for a *prima facie* case of age discrimination under the DDEA by taking the "interpretive lead" from federal decisions); *see also Khan v. Delaware State Univ.*, 2016 WL 3575524, at *13 (Del. Super. June 24, 2016) (discussing that claims "under the ADEA are governed by a three-step burden-shifting framework articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, [and that] [u]nder long-standing Delaware Supreme Court precedent, the *McDonnell Douglas* framework also applies to claims under the DDEA").

[48] 434 A.2d at 376–77.

[49] *See, e.g., Morrow v. Delaware Bureau of Cmty. Corr.*, 2016 WL 7495842, at *1 (Del. Super. Dec. 28, 2016); *Khan*, 2016 WL 3575524, at *13; *Seaford Sch. Dist. v. Delaware Dep't of Lab.*, 1989 WL 147425, at *2 (Del. Super. Nov. 15, 1989).

[50] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[51] An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, **reassignment with significantly different responsibilities**, or a decision causing significant change in benefits." *Floray v. Dargan Extensions, LLC*, 2016 WL 4442210, at *3 (Del. Super. Aug. 19, 2016) (emphasis supplied) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The Board seemed to recognize that Warren's reassigned role required her to perform substantially different work with different responsibilities. Hr'g Tr. at 41:3–8. Thus, the Board, on remand, will need to articulate whether such a change does or does not qualify as an adverse employment action.

sufficiently younger person[52] or a person outside the protected age group.[53] The plaintiff's burden in establishing a *prima facie* case of age discrimination "is not particularly onerous" and "poses 'a burden easily met.'"[54]

The Order stated that Warren had to establish that: "(1) she was a member of a protected class; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected class and the adverse employment action."[55] It cited a decision of this Court, *Ennis v. Delaware Transit Corporation*,[56] which dealt exclusively with race discrimination and listed basic elements of discrimination claims. In that case, this Court specifically stated that a *prima facie* case "'**cannot be established on a one-size-fits-all basis**,' since the facts of an employment discrimination case will inevitably vary."[57]

Before *Ennis* was decided, the Delaware Supreme Court in *Riner* had already established the test for age discrimination. Specifically, the "causal connection" or "nexus" referenced in *Ennis* as one of the basic elements for a discrimination claim[58]

---

[52] Thus, the plaintiff in an age discrimination case can satisfy the *prima facie* case standard by showing that the plaintiff was replaced by someone within the protected category (that is, over 40) but "sufficiently younger." The Third Circuit has stated that in order for a plaintiff to satisfy the "sufficiently younger standard . . . there is no particular age difference that must be shown, but while different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 (3d Cir. 2004) (citation omitted). *Accord Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (holding that plaintiff satisfied the fourth prong of a *prima facie* case for age discrimination based on evidence that he was eight years older than one retained worker and sixteen years older than the second retained worker); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 726, 730 (3d Cir. 1995) (holding that when plaintiff showed that he was replaced by two younger individuals—one who was four years younger and the other who was ten years younger—the fourth prong of the *prima facie* case was satisfied).

[53] *Morrow*, 2016 WL 7495842, at *1; *Khan*, 2016 WL 3575524, at *13; *Riner*, 434 A.2d at 376–77.

[54] *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 365 (3d Cir. 2008) (citations omitted).

[55] Bd. Order at 3–4.

[56] *Ennis v. Del. Transit. Corp.*, 2015 WL 1542151 (Del. Super. Mar. 9, 2015).

[57] *Id.* at *5 (citations omitted).

[58] *Id.* (listing the following elements: "(1) that the plaintiff is a member of a protected class; (2) that the plaintiff was qualified for the job at issue; (3) that the plaintiff suffered an adverse

13

is inferred if the plaintiff was replaced by a younger person.[59] In this case there was no "replacement" in a technical sense, as everyone in the unit was transferred. However, the younger employees within the same unit were allegedly given roles that were substantially similar to the ones they previously had, specifically, data analyst roles, and at least one was allegedly trained to perform the tasks for which Warren had primary responsibility,[60] which may amount to Warren's effective replacement.[61] In addition, Warren also trained others, who may have been younger—the record is not clear—to take over some of her primary responsibilities (for example, John McDermott).[62] This Court has held that "[w]here age discrimination is alleged, a plaintiff can meet her prima facie burden by presenting evidence that a younger employee **assumed her responsibilities** after her employer decided not to replace her."[63]

This principle aligns with the Third Circuit's recent instruction that "[w]here the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'"[64] The MERB appeared interested in the fact that Warren was training others, including Winder, to assume her responsibilities. A portion of that discussion reads as follows:

employment action sufficient to invoke Title VII and/or DDEA protection; and (4) that there is a nexus or connection between the plaintiff's protected trait and the adverse employment decision.").

[59] *Currie v. Dentsply Int'l, Inc.*, 2011 WL 664912, at *5 (Del. Super. Jan. 4, 2011).

[60] Hr'g Tr. at 38.

[61] *Cf. Torre v. Casio, Inc.*, 42 F.3d 825, 831 (3d Cir. 1994) (finding that even without evidence that plaintiff, a 59–year-old employee terminated in a reduction in force action, was replaced in his position, he had established a prima facie case of age discrimination based on the fact that younger employees in his department "subsumed" his responsibilities when it became economically impossible to hire a replacement, and that similarly situated but younger people— age 38 and 41—were retained when plaintiff was transferred and then discharged).

[62] Hr'g Tr. at 38–40.

[63] *Currie*, 2011 WL 664912, at *5 (citations omitted).

[64] *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (quoting *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

Chairman Tupman: Ma'am, I don't understand why if three had been performing all of the waiver work, why all of a sudden now we need to have seven people who are at least capable of doing that. Can you explain that to me?

Ms. Warren: I have no idea.[65]

These facts, presented by Warren, need to be further addressed on remand when the MERB considers whether the fourth element has been met.

Once a *prima facie* case has been established, there is an inference "that discrimination has occurred, [and] the burden shifts to the employer to come forward with evidence that the reasons for the discharge were not discriminatory. If such evidence is produced, the employee must then have the opportunity to show that the employer's proffered reasons are mere pretexts designed to cover discriminatory motives."[66]

In short, the MERB committed legal error by failing to apply correctly the test for determining whether Warren had established a *prima facie* case. Specifically, the MERB appeared to be unaware that Warren could establish her *prima facie* case by showing that she was effectively replaced by younger employees who assumed her responsibilities. In addition, the MERB's brief analysis of the issue precludes this Court from deciphering what specific element, or elements, of the *prima facie* case Warren's claim failed to meet and for what reasons. Therefore, the MERB's decision regarding whether Warren had made out a *prima facie* case of age discrimination must be reversed and the matter remanded for further proceedings consistent with this opinion.

---

[65] Hr'g Tr. at 40:7–14.

[66] *Riner*, 434 A.2d at 377 ("Of course, the only burden that shifts in such cases is the burden of producing evidence in support of the conflicting positions; the burden of proving discrimination by a preponderance of the evidence stays with the plaintiff throughout the case.").

## IV. CONCLUSION

For the reasons explained *supra*, this matter is **REVERSED** and **REMANDED** for an additional hearing, in the presence of the parties,[67] consistent with this opinion as follows:

a. The MERB must determine whether Warren's transfer met any of the statutorily pronounced conditions in which seniority must be considered, making appropriate and explicit findings of facts that spell out its conclusions.

b. The MERB must apply the age discrimination elements and determine if a *prima facie* case is established. If the MERB finds that a *prima facie* case has not been established, it must articulate which factors have not been met and why. If the MERB finds that a *prima facie* case has been established, the MERB should move on to determine whether the DHSS has rebutted the inference of age discrimination by producing evidence to show that the transfer was for non-discriminatory purposes, and whether Warren can then show that the proffered non-discriminatory reasons are mere pretexts designed to hide discriminatory motives.[68]

Jurisdiction is not retained.

---

[67] The parties have a statutory right to participate in the hearing on remand by presenting additional evidence and legal argument, consistent with this opinion, as to the contested legal issues. *See State v. Steen*, 719 A.2d 930, 934 (Del. 1998) ("The Board is to decide the matter, after the remand hearing, on the basis of the evidence from the prior hearing plus any new evidence and legal arguments the parties decide to present.")

[68] As noted in *Riner* and subsequent decisions of this Court, this Court may not make findings of fact regarding any evidence presented by DHSS below to rebut the allegations of age discrimination. *Seaford Sch. Dist.*, 1989 WL 147425, at *3 (citing *Riner*, 434 A.2d at 377). Thus, the Court "may go no further in reviewing the record because the Board failed to make any explicit findings regarding [DHSS's] evidence." *Id.* at *4.

**IT IS SO ORDERED.**

Noel Eason Primos, Judge

NEP:tls
*Via File & ServeXpress*
oc:   Prothonotary
cc:   Ellen Warren, *pro se, via U.S. Mail*
       Counsel of Record

17